IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HERMENIA HARRIS,

    Plaintiff,

v.                                                                 Civil Action No. 3:18cv618

MATRIX FINANCIAL SERVICES
CORPORATION *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Hermenia Harris's Motion to Remand. (ECF No. 5.) Defendant Matrix Financial Services Corporation ("Matrix") responded, and Harris replied. (ECF Nos. 14, 21.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant Harris's Motion to Remand.

### I. Factual and Procedural Background

#### A.     Summary of Allegations in the Complaint

This action against Matrix and Samuel I. White, P.C. ("White," and, together with Matrix, "Defendants") arises from Defendants' allegedly wrongful foreclosure of Harris's home (the "Property"). Harris entered into a mortgage loan with Nations Lending Corporation of Ohio, evidenced by a note (the "Note"), and secured by a deed of trust (the "Deed of Trust"). (Compl. ¶ 6, ECF No. 1-1.) The Deed of Trust identified Harris as the "Borrower" and appointed Deborah Darrah as trustee. (*Id.* ¶¶ 6, 8.)

According to Harris, at some point, Nations Lending Corporation of Ohio assigned the Note to Flagstar Bank, FSB ("Flagstar"), which "asserted rights as holder of the [N]ote." (*Id.* ¶ 10.) In April 2018, Flagstar "advised Ms. Harris by letter that [Matrix] asserted rights as holder of the [N]ote based on a purported transfer of the [N]ote." (*Id.* ¶ 11.) According to Harris, at all relevant times, Flagstar acted as servicer of the loan and "acted on its own and as agent for" Matrix. (*Id.* ¶ 13.) Matrix eventually "executed a document which recited that it removed [Darrah as original trustee] . . . and appointed White as substitute trustee on the [D]eed of [T]rust." (*Id.* ¶ 17.)

At an unspecified time, Harris fell into arrears as to the Note. Harris "applied for and obtained a loan modification from [Flagstar] in 2016." (*Id.* ¶ 15.) Harris again fell into arrears as to the Note.

According to Harris, Flagstar ultimately "instructed" White to foreclose on the Property. (*Id.* ¶ 31.) "In response to instruction from [Flagstar], White scheduled the home for foreclosure on May 4, 2018 and advertised the same in a newspaper with general circulation in Nottoway County, Virginia." (*Id.* ¶ 32.) On May 4, 2018, "White conducted a purported foreclosure" of the Property. (*Id.* ¶ 33.) According to Harris, "White had no authority to foreclose on the home on May 4, 2018 and [Flagstar] and [Matrix] were not entitled to a foreclosure on that date and, therefore, the purported foreclosure was void, alternatively, voidable." (*Id.* ¶ 33.)

Harris contends that Defendants improperly foreclosed on the Property in violation of Federal Housing Authority ("FHA") regulations incorporated into the Note and Deed of Trust.[1] First, "[u]nder the terms of the [N]ote, the holder of the [N]ote could not and cannot accelerate

---

[1] Harris references multiple FHA regulations allegedly at issue in this case, and includes nine pages of text from a "Handbook" published by the Secretary of Housing and Urban Development, which, according to Harris, also governs. For purposes of the instant motion, the Court focuses only on the allegations in the Complaint and FHA regulations that relate to the Motion to Remand.

2

the [N]ote unless permitted to do so by FHA regulations." (Compl. ¶ 19 (quoting the alleged Note).) Similarly, "[u]nder the terms of the [D]eed of [T]rust, the holder of the [N]ote secured by the [D]eed of [T]rust cannot foreclose on the home unless permitted to do so by FHA regulations." (*Id.* ¶ 20.) Harris alleges that Defendants violated several FHA regulations, and consequently the terms of the Note and the Deed of Trust, when they foreclosed on the Property.

Most relevant here, 24 C.F.R. § 203.604 states, in part: "The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604. Additionally, "a lender, in order to offer a borrower a face-to-face meeting must, at a minimum, do the following: (a) send a letter offering such a meeting; and (b) go to the door of the borrower's home for the purpose of offering a face-to-face meeting." (Compl. ¶ 22 (citing 24 C.F.R. § 203.604(d)).) According to Harris, who cites to FHA regulations, "[b]efore initiating foreclosure, the mortgagee must ensure that all servicing requirements . . . are met." (Compl. ¶ 22 (citing 24 C.F.R. § 203.606(a)).)

Harris claims that "no creditor as to the loan has ever conducted a face-to-face meeting with Ms. Harris nor has any creditor ever attempted or offered a face-to-face meeting with Ms. Harris under the [N]ote and [D]eed of [T]rust according to the minimum requirement of FHA regulations." (Compl. ¶ 28.) Harris contends that, because Matrix failed to arrange or attempt to arrange a face-to-face meeting in accordance with the requirements of 24 C.F.R. § 203.604, Matrix "was prohibited from foreclosing on the home." (*Id.*)

Count One alleges that Matrix breached the provisions of the Note and Deed of Trust incorporating the FHA regulations when it acted "through White to effect the purported foreclosure." (Compl. ¶ 37.) Count Two avers that Defendants "failed to effect removal of

3

Darrah as trustee . . . and failed to appoint White as substitute trustee on the [D]eed of [T]rust."[2] (Compl. ¶ 54.) Count Three alleges breach of the implied covenant of good faith and fair dealing. (Compl. ¶ 66.)

Count Four, most relevant to the Motion to Remand, contends that White breached its fiduciary duty to Harris. "White was obligated to refrain from foreclosing on the [Property] until [Matrix] established compliance with all pre-conditions to foreclosure, including the [FHA regulations] incorporated into the [N]ote and [D]eed of [T]rust and proper appointment of White as substitute trustee on the [D]eed of [T]rust." (Compl. ¶ 75.) According to Harris, White "breached its fiduciary duty to Ms. Harris by foreclosing o[n] the [Property] with actual knowledge of [Matrix's] failure to comply with the preconditions for foreclosure required by the [N]ote and [D]eed of [T]rust." (Compl. ¶ 80.)

Harris posits that as a result of Defendants' actions, she suffered damages, including: the loss of record title to her home, damage to her credit record, deprivation of the quiet enjoyment of the home, inconvenience, and time and money spent litigating this matter. Harris seeks rescission of the foreclosure sale of the Property, which was sold for $107,892, and $65,000 in compensatory damages.

### B. Procedural History

Harris filed her Complaint in the Nottoway County Circuit Court (the "Nottoway Circuit Court") in Virginia. Matrix states that it was served on August 24, 2018. On September 11, 2018, Matrix, an Arizona corporation,[3] removed the action to this Court pursuant to 28 U.S.C.

---

[2] Specifically, Harris claims the document purportedly replacing Darrah with White "is an invalid document which has not been executed by the party secured by the [D]eed of [T]rust." (Compl. ¶ 54.)

[3] Matrix asserts that it "is a corporation of the State of Arizona with a principal place of business in Arizona." (Notice Removal ¶ 11, ECF No. 1.)

4

§ 1441[4] on the basis of diversity jurisdiction. Although both Plaintiff Harris and Defendant White are citizens of Virginia, Matrix argues that the Court should disregard White's citizenship under either the doctrine of fraudulent joinder or the doctrine of nominal parties. Harris moved to remand the action based on a lack of diversity between the parties.[5] Matrix responded, and Harris replied.

## II. Applicable Legal Standards

### A. Removal and Remand

Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). Courts must construe removal jurisdiction

---

[4] Section 1441 provides, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

[5] Appropriately, Harris does not contest that the amount in controversy exceeds $75,000. As Matrix noted in its Notice of Removal, Harris seeks "rescission of the foreclosure of the Property that was sold for $107,892.00 on May 4, 2018 plus $65,000 in compensatory damages." (Notice Removal 7 (footnote omitted).)

strictly. *Id.* (citing *Mulcahey*, 29 F.3d at 151). "'If federal jurisdiction is doubtful, a remand is necessary.'" *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

A defendant may remove a civil action initially filed in state court if the plaintiff could have originally brought the action in federal court. *Id.* at *2 (citing *Yarnevic v. Brink's Inc.*, 102 F.3d 753, 754 (4th Cir. 1996)); *see* 28 U.S.C. § 1441(a). A federal district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different states." 28 U.S.C. § 1332(a)(1). Federal diversity jurisdiction requires complete diversity of citizenship. *Abraham*, 2011 WL 1790168 at *2 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)); *see also* 28 U.S.C. § 1332(a)(1). "[T]he 'citizenship of each plaintiff [must be] diverse from the citizenship of each defendant.'" *Abraham*, 2011 WL 1790168, at *2 (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (second alteration in original)).

### B.     **The Fraudulent Joinder Doctrine**

The fraudulent joinder doctrine operates as an exception to the complete diversity requirement, permitting a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, and dismiss the nondiverse defendants, thereby retaining jurisdiction. *Abraham*, 2011 WL 1790168 at *1 (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (alteration in original) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder bears a heavy burden—it must show that the

plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Id.* The Court need not confine its review to the allegations in the pleadings, but can consider the entire record. *Mayes*, 198 F.3d at 464.

### C. The Nominal Party Doctrine

The doctrine of nominal parties is "related[,] but not identical" to the doctrine of fraudulent joinder. *Payne v. Bank of America, N.A.*, No. 3:09cv80, 2010 WL 546770, at *4 (W.D. Va. Feb. 11, 2010). A "nominal party" is one that "ha[s] no immediately apparent stake in the litigation." *Hartford Fire Ins. Co. v. Harlesyville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2014). "In other words, the key inquiry is whether the suit can be resolved without affecting the . . . nominal defendant in any reasonably foreseeable way." *Id.* Determining nominal party status "is a practical inquiry, focused on the particular facts and circumstances of a case." *Id.*

### III. The Court Will Remand the Action Because the Proper Inclusion of White as a Defendant Destroys Diversity Jurisdiction

In its Notice of Removal, Matrix asserts diversity jurisdiction, arguing that the Court should disregard White's citizenship on three grounds. First, Matrix asserts "there is evidence of outright fraud."[6] (Notice Removal 5.) Matrix also asserts that Harris fraudulently joined White because "there is no reasonable basis for [Harris] to recover against [White] as Virginia law does

---

[6] In support of this claim, Matrix points to two instances in the Complaint that refer to two non-parties to the dispute. Matrix claims "it is clear the allegations pertained to another action and w[ere] thrown in this lawsuit only to prevent removal." (Notice Removal 5.)
The Court finds any allegation of outright fraud unpersuasive. Harris explains in her Motion to Remand, "those references are the result of typographical errors and not an attempt to engage in outright fraud regarding jurisdictional pleading." (Mem. Supp. Mot. Remand 3 n.2, ECF No. 6.) Appropriately, Matrix did not pursue these arguments in response.

7

not recognize [Harris's] cause of action against" White. (*Id.* 3–4.) Finally, Matrix argues that White only constitutes a nominal party because it has no stake in the litigation.

The Court concludes that a cause of action may exist against White in this suit. Accordingly, White constitutes a proper party, and complete diversity does not exist between plaintiff and defendants in this case. Lacking either federal question jurisdiction[7] or diversity jurisdiction, the Court must grant the Motion to Remand for lack of subject matter jurisdiction.

### A. A Cause of Action Possibly Exists Against White

For Matrix to maintain this action in federal court, Matrix must show that *no possibility* exists that Harris could establish a cause of action against White in state court. *See Hartley*, 187 F.3d at 424. Matrix argues that Count Four of the Complaint, which alleges that White breached its fiduciary duty to Harris, does not state a cause of action recognized by Virginia law. For the reasons below, the Court cannot so find. The Court concludes that at least a possibility exists that Harris can establish a cause of action for breach of fiduciary duty against White under Virginia law.

Count Four of the Complaint alleges that White breached its fiduciary duty to Harris because it owed a duty of impartiality to both Matrix and Harris. According to Harris, White "was required to make a reasonable inquiry as to whether [Matrix] had complied with the preconditions for foreclosure of Ms. Harris'[s] home." (Compl. ¶ 77.) Harris claims that "White disregarded its fiduciary duty to Ms. Harris in order to obtain legal fees from [Flagstar] and/or [Matrix] for collection action as to the loan." (*Id.* ¶ 79.) Harris avers that White had "actual knowledge" of Matrix's failure to comply with the preconditions for foreclosure. (*Id.* ¶ 80.)

---

[7] Appropriately, no party raises federal question jurisdiction as an alternate basis for jurisdiction.

8

Matrix counters that "Virginia law does not recognize [Harris's] cause of action against" White. (Notice Removal ¶ 13.) Further, according to Matrix, Harris's Complaint "alleges no substantive actions that [White] took." (*Id.* ¶ 14.) Matrix misstates the burden of proof.

Harris does not shoulder the burden to prove, at this jurisdictional stage, that Virginia law does or will recognize her claims against White. Rather, Matrix must show the Harris "cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 424. Importantly, the determination does not turn on the ultimate merits of Harris's claims, as this "jurisdictional inquiry is not the appropriate stage of litigation to resolve the[] various uncertain questions of law and fact." *Id.* at 425 (finding that the district court "erred by delving too far into the merits" of the claims). Instead, "the sole question before the Court is whether, under the laws of the Commonwealth of Virginia, an action for breach of fiduciary duty could possible lie against" White. *Wilcher v. Nationstar Mort., LLC*, No. 3:18cv421, 2018 WL 4496489, at *3 (E.D. Va. Sept. 19, 2018).

The Supreme Court of Virginia's decision in *Squire v. Virginia Housing Development Authority*, a factually similar case, plainly resolves the issue. 287 Va. 507 (2014). In *Squire*, a plaintiff sued a substitute trustee for breach of fiduciary trust stemming from the allegedly improper foreclosure of her property. *Id.* As here, the plaintiff claimed the holder of the loan improperly foreclosed on her property because it did not "have, or make reasonable efforts to arrange, a face-to-face meeting with" the plaintiff before initiating foreclosure proceedings, as required by the FHA regulations incorporated into the deed of trust at issue. *Id.* at 517. In the trial court, the substitute trustee demurred, which the trial court sustained. The Virginia Supreme Court reversed because the complaint at issue

> alleged that [the substitute trustee] breached its fiduciary duty in conducting the foreclosure sale. Further, it alleged that she incurred damages as a result of these

breaches. As such, it was sufficient to withstand demurrer and the trial court erred in sustaining . . . [the substitute trustee's] demurrer as to [the plaintiff's] breach of fiduciary duty claim.

*Id.* at 521. As in *Squire*, Harris alleges that White breached its fiduciary duty in conducting the foreclosure sale, claiming that she incurred and continues to incur damages from this breach.

Several decisions in the Eastern District of Virginia have recognized that *Squire* stands for the proposition that at least a possibility exists that a plaintiff can bring a breach of fiduciary duty claim against a substitute trustee in a case like the one at bar. *See, e.g., Gould v. Wells Fargo Bank, Nat'l Ass'n*, 3:18cv193, 2018 WL 3493076 at *2 (E.D. Va. July 20, 2018) (concluding that "there is indeed a possibility that [a plaintiff] can establish a cause of action against" the substitute trustee for breach of fiduciary duty in a wrongful foreclosure suit); *Wilcher*, 2018 WL 4496489 at*3 ("The Court's analysis begins and ends with the Supreme Court of Virginia's decision in [*Squire*]."); *Gibbs v. Fannie Mae*, No. 3:18cv75, 2018 U.S. Dist. LEXIS 58258, at *9 (E.D. Va. Apr. 4, 2018) ("Based upon the holding in *Squire*, it is possible that Virginia law supports a claim for fiduciary breach against a substitute trustee under the circumstances alleged by Plaintiff."). Matrix's arguments to the contrary do not persuade.[8]

---

[8] In its Response opposing the Motion to Remand, Matrix attempts to distinguish this case from *Squire* by arguing that Harris relies on regulations that have "been effectively superseded on a number of fronts." (Resp. 5, ECF No. 14.) Matrix also argues that White did not breach any fiduciary duty because "only the officially, formally promulgated regulations . . . were incorporated into the Loan Agreement as a condition precedent to acceleration and foreclosure." (*Id.*)

These arguments address the merits of Harris's claims, and the Court cannot consider them at this procedural juncture. *See Hartley*, 187 F.3d at 425 (The "jurisdictional inquiry is not the appropriate stage of litigation to resolve the[] various uncertain questions of law and fact.") Whether Harris ultimately will, or can, prevail on her claims against White does not guide the jurisdictional question. At this stage, it suffices that a possibility exists that Harris may bring her breach of fiduciary duty claim against White in Nottoway Circuit Court.

Because a cause of action under Virginia law may exist against White for breach of fiduciary duty in this case, the doctrine of fraudulent joinder does not apply.[9] Harris properly named White as a defendant.

### B. Complete Diversity Does Not Exist Between Parties

To bring and sustain an action in federal court, the Court must have subject matter jurisdiction. Here, Matrix relies on diversity jurisdiction to remove the case to federal court. Specifically, Matrix alleges the amount in controversy exceeds $75,000 and that Harris and Matrix meet the diversity requirements because of Plaintiff Harris's Virginia citizenship and Defendant Matrix's Arizona citizenship. Matrix asks the Court to disregard Defendant White's Virginia citizenship, which the Court cannot do.

Accordingly, Matrix fails to establish complete diversity between Harris and Defendants, an essential element of diversity jurisdiction. Matrix does not assert another basis for subject matter jurisdiction in its Notice of Removal, nor does it raise any additional arguments in its Response to the Motion to Remand. Because Matrix cannot establish this Court's federal subject matter jurisdiction over the litigation, the Court must remand the action back to the Nottoway Circuit Court.

---

[9] Having found a possibility that a cause of action against White exists, the Court concomitantly concludes that White does not constitute a nominal party. Should Harris ultimately prevail in her claims against White, White may be liable for the damages and other relief that the Nottoway Circuit Court deems appropriate.

11

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Remand.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 11/16/18
Richmond, Virginia